**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

SHENANDOAH VALLEY NETWORK;
COALITION FOR SMARTER GROWTH;
ROCKBRIDGE AREA CONSERVATION
COUNCIL; VIRGINIA ORGANIZING
PROJECT; SCENIC VIRGINIA
INCORPORATED; VALLEY
CONSERVATION COUNCIL; SIERRA
CLUB; NATIONAL TRUST FOR
HISTORIC PRESERVATION IN THE
UNITED STATES; APVA
PRESERVATION VIRGINIA,

       *Plaintiffs-Appellants,*

       and

LARRY ALLAMONG,

       *Plaintiff,*

       v.

J. RICHARD CAPKA, Administrator,
Federal Highway Administration;
MARY PETERS, Secretary, United
States Department of
Transportation; ROBERTO FONSECA-
MARTINEZ, Virginia Division
Administrator Federal Highway
Administration,

       *Defendants-Appellees,*

No. 10-1954

v.

VIRGINIA DEPARTMENT OF
TRANSPORTATION; VIRGINIA
SECRETARY OF TRANSPORTATION,
PIERCE HOMER; COMMONWEALTH OF
VIRGINIA; COMMISSIONER OF
TRANSPORTATION, DAVID S. EKERN,

*Intervenors-Appellees.*

Appeal from the United States District Court
for the Western District of Virginia, at Charlottesville.
Norman K. Moon, Senior District Judge.
(3:07-cv-00066-nkm-bwc)

Argued: December 8, 2011

Decided: February 17, 2012

Before WILKINSON, KING, and KEENAN,
Circuit Judges.

Dismissed by published opinion. Judge Wilkinson wrote the opinion, in which Judge King and Judge Keenan joined.

**COUNSEL**

**ARGUED:** Matthew E. Price, JENNER & BLOCK, LLP, Washington, D.C., for Appellants. Sambhav N. Sankar, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON BRIEF:** Andrea C. Ferster, Washington, D.C., for Appellants; Elizabeth S. Merritt, Deputy General Counsel, Paul W. Edmondson, Vice President &

General Counsel, NATIONAL TRUST FOR HISTORIC PRESERVATION, Washington, D.C., for Appellant National Trust for Historic Preservation. Kenneth T. Cuccinelli, II, Attorney General, Suzanne T. Ellison, Senior Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia; Timothy J. Heaphy, United States Attorney, Anthony P. Giorno, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia; Ignacia S. Moreno, Assistant Attorney General, UNITED STATES DEPARTMENT OF JUSTICE, Environment & Natural Resources Division, Washington, D.C.; Tracy White, UNITED STATES DEPARTMENT OF TRANSPORTATION, Federal Highway Administration, Baltimore, Maryland, for Appellees.

---

**OPINION**

WILKINSON, Circuit Judge:

The Federal Highway Administration ("FHWA") and the Virginia Department of Transportation ("VDOT") (collectively, "the Agencies") are planning improvements to Virginia's Interstate 81 corridor using a tiered review process. Appellants—a group of environmental and preservation organizations—challenged the Agencies' execution of the tiered process, alleging various constitutional and statutory violations. The district court rejected these challenges and granted summary judgment in favor of the Agencies.

On appeal, appellants claim that the Agencies are attempting to foreclose consideration of environmentally friendly alternatives for specific sections of I-81 by choosing a corridor-wide improvement concept in the first stage of the review process. Appellants, however, misapprehend the Agencies' position. As confirmed at oral argument, the Agencies plan to comply with the Stipulation in this case and the

National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.*, by considering site-specific alternatives to the corridor-wide concept in subsequent stages. Because there is no actual dispute here, and because appellants cannot show any injury or imminent threat of injury, this suit is not justiciable. Accordingly, we must dismiss the appeal.

## I.

## A.

NEPA requires federal agencies to prepare a detailed statement on the environmental impacts of any "major Federal action[ ] significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). The resulting Environmental Impact Statement ("EIS") must describe "any adverse environmental effects which cannot be avoided" and rigorously explore alternatives to the proposed action. *Id.*; *see* 40 C.F.R. §§ 1502.1, 1502.14. NEPA does not mandate substantive results, *Hughes River Watershed Conservancy v. Glickman*, 81 F.3d 437, 443 (4th Cir. 1996), but it does require agencies to "take a 'hard look' at environmental consequences" and to disseminate information that allows the public to participate in the decisionmaking process, *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989) (citation omitted).

Agencies are encouraged to conduct a "tiered" or multi-phase analysis when contemplating large or complex projects. *See* 40 C.F.R. §§ 1502.20, 1508.28. At the first tier of "major transportation actions," agencies consider "broad issues such as general location, mode choice, and areawide air quality and land use implications of the major alternatives." 23 C.F.R. § 771.111(g). The agencies then address "site-specific details" at the second tier. *Id.* This approach allows agencies "to eliminate repetitive discussions of the same issues and to focus on the actual issues ripe for decision at each level of environmental review." 40 C.F.R. § 1502.20.

After an agency approves a transportation project and notifies the public of its final action in the Federal Register, the limitations period for NEPA claims is 180 days. 23 U.S.C. § 139(*l*)(1). Claims arising under NEPA are subject to judicial review pursuant to the Administrative Procedure Act ("APA"). *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 189 (4th Cir. 2009). A reviewing court must set aside the action if it is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* (citing 5 U.S.C. § 706(2)(A); *Citizens To Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 413-14 (1971)).

B.

Interstate 81—a major trucking corridor—extends 855 miles from Tennessee to New York at the Canadian border, connecting markets in the northeastern United States and Canada to the mid-southern states. By any measure this highway, and especially some segments of it, bears heavy traffic. In Virginia, the I-81 corridor includes many priceless natural and historic properties, including national parks, Civil War battlefields, historic landscapes, and Main Street historic districts. As a spokesman for the National Trust for Historic Preservation noted, "[M]any small towns in the Shenandoah Valley have worked for many years to preserve their historic character and to revitalize their downtown commercial districts by capitalizing on their historic properties." J.A. 190.

FHWA and VDOT are upgrading Virginia's I-81 corridor using a tiered NEPA review. In a 2003 Streamlining Agreement, the Agencies agreed to make broad, corridor-wide decisions in Tier 1 and then evaluate site-specific proposals in subsequent stages. The Streamlining Agreement set forth the decisions that would be made at the conclusion of each tier, established timelines, and explained that the Tier 1 process would require the Agencies to select a corridor-wide improvement concept, such as adding highway capacity, adding rail capacity, or segregating commercial truck traffic from general

purpose traffic. In Tier 2, the Agreement stated, the Agencies would settle on conceptual design features of the improvements for the components indentified in Tier 1.

FHWA issued a Final Tier 1 EIS on March 21, 2007. The Tier 1 EIS identified a wide range of approaches for improving I-81, including: (1) a "No-Build Concept" in which the only projects that would be completed are those that are fully funded through construction; (2) a "Transportation System Management ("TSM") Concept" that included safety improvements, truck climbing lanes, and advanced transportation management systems; (3) four different "Rail Concepts" involving rail line improvements; (4) five "Roadway Concepts" involving the addition of vehicle lanes for the entire length of I-81 in Virginia; (5) five "Combination Concepts" that combined rail and highway improvements; and (6) five "Separated Lane Concepts" involving the separation of lanes in the same direction of travel.

The EIS analyzed how well each concept would meet I-81's projected capacity and safety needs and the potential impact of each concept on social, economic, and environmental resources. It concluded that the No-Build Concept, a stand-alone TSM Concept, and a stand-alone Rail Concept would all fail to satisfy the heavy transportation demands on the I-81 corridor. Moreover, the EIS determined, no concept that added a uniform number of new lanes—separated or not—along the entire corridor would satisfy I-81's needs in certain sections without providing more lanes than necessary in other sections. Accordingly, the EIS settled on a concept that adds a variable number of lanes, based on traffic demands, to individual segments of the corridor.

On June 6, 2007, FHWA issued a Tier 1 Record of Decision ("ROD"), which announced that the concept that FHWA was advancing into Tier 2 involves constructing no more than two general purpose lanes in each direction, where needed, to address 2035 traffic demands. Along with this concept, the

ROD reported, FHWA would advance to Tier 2 several short-term, independent safety and operational improvements. Importantly, the ROD also declared that FHWA would divide Virginia's I-81 corridor into eight sections of independent utility for site-specific analysis at Tier 2.

Following issuance of the Tier 1 ROD, FHWA published a Notice of Final Agency Actions in the Federal Register on June 18, 2007. The Notice advised the public of the specific decisions made at the conclusion of Tier 1, that the Tier 1 decisions would form the basis of subsequent tier proceedings, that the decisions were final, and that—pursuant to 23 U.S.C. § 139(*l*)(1)—judicial review of the Tier 1 decisions would be barred unless sought within 180 days.

C.

Appellants filed a complaint in the U.S. District Court for the Western District of Virginia within the 180-day period of limitations—on December 17, 2007—and amended the complaint on February 14, 2008. Count I of the amended complaint charged, among other things, that improvement concepts such as the TSM alternative should have been advanced to Tier 2. Count II alleged that the Agencies violated NEPA by prematurely approving the Tier 1 ROD without waiting for the completion of an I-81 freight rail study to fully assess the feasibility of multi-state rail as an alternative improvement concept.

Finally, Count III—entitled "Violation of Due Process, 42 U.S.C. § 1983"—charged that the Agencies' publication of the Tier 1 Statute of Limitations Notice will effectively bar appellants from challenging any failure by the Agencies to consider alternatives when specific I-81 projects are considered in the Tier 2 NEPA documents. Consequently, Count III asserted, the Notice violates appellants' right to judicial review of those site-specific decisions.

On October 10, 2008, the parties filed a joint Stipulation and Agreement in order to narrow counts in the pending litigation. The Agreement included a Stipulation of Dismissal in which the parties agreed to dismiss Count I with prejudice. The parties expressly disagreed, however, about the impact of the Tier 1 ROD and limitations period on future claims challenging the scope of alternatives to be considered at Tier 2. Appellants described their position as follows:

> [I]t is Plaintiffs' position that the Tier 1 ROD is not a final decision with respect to the range of alternatives that must be considered under NEPA if and when those Tier 2 projects are actually proposed as federal actions. Plaintiffs do not agree and do not stipulate that the SOL Notice will preclude any challenges to Tier 2 decisions alleging failure to consider any alternatives under NEPA or any other law. Instead, it is Plaintiffs' position that future claims based on Tier 2 projects and Tier 2 NEPA documents are not ripe for judicial review until a final decision is made to approve that Tier 2 project, and are not subject to the SOL Notice.

J.A. 184. For their part, the Agencies articulated the following stance:

> It is the [Agencies'] position that alternatives to be considered during Tier 2 will be consistent with the improvement concept advanced from Tier 1. . . . Alternatives that are not consistent with this improvement concept will not be considered in the Tier 2 NEPA documents, except where applicable laws and regulations require the consideration of other alternatives that avoid impacting specific protected environmental resources or where a substantial change in the proposed action for a specific [section of independent utility] or significant new and relevant information requires consideration of an

additional alternative(s). It is the [Agencies'] position that claims challenging the improvement concept advanced from Tier 1 into Tier 2 are presently ripe for judicial review and are barred unless filed on or before December 17, 2007.

*Id.*

The parties subsequently cross-moved for summary judgment, which the district court granted in favor of the Agencies. The court rejected appellants' Count II claim that the Agencies should have postponed Tier 1 decisions pending completion of the I-81 freight rail study, finding that appellants' argument was "not only contrary to NEPA and case law, but [was] unreasonable in light of existing studies concluding that rail is simply not a viable solution for the problems identified in the I-81 Study." The court also rejected appellants' due process claim, stating that "[t]he Tier 1 [EIS] and ROD explain that the selected variable-lane widening concept advanced will appropriately narrow the range of alternatives under consideration at Tier 2, and the SOL notice fully complies with FHWA's guidance for issuing such notices."

Appellants then moved to alter or amend the judgment, arguing that the district court opinion had failed to address (1) whether the Agencies' decision "to eliminate alternatives from consideration during any future Tier 2 NEPA studies was presently ripe for review," and (2) if ripe, whether that decision violated NEPA. Concluding that it had in fact addressed these issues, the district court denied appellants' motion. According to the court, it had already held "that the Tier 1 decision to eliminate improvement concepts from further consideration during Tier 2 was ripe for review." Moreover, the court asserted, the Agencies' "analysis of alternate improvement concepts and the decisions rendered concerning those concepts were compliant with NEPA and the APA." The court also denied appellants' request to file a second

amended complaint, explaining that "further NEPA challenges to the decision to reject certain alternate improvement concepts from consideration at Tier 2 are futile." This appeal followed.

## II.

The substance of appellants' appeal is that the district court's ruling will prevent them from ever challenging the Agencies' failure to consider site-specific alternatives to lane-widening. According to appellants, "the FHWA has devised an unprecedented shell game by interpreting its Tier 1 ROD as including a decision to prospectively eliminate alternatives from consideration in future [site-specific] 'Tier 2' NEPA studies" that—due to the 180-day statute of limitations—"must be reviewed now, even though these projects have not yet been proposed, designed, or evaluated." Appellants' Reply Br. 1-2. "The district court's decision," appellants contend, "would clear the way for the Agencies to widen individual segments of I-81 in the future, without further consideration of alternatives, regardless of whether those widening projects are in environmentally sensitive areas or would harm historic sites." *Id.* at 23. Accordingly, appellants brought this appeal to ensure that they are not foreclosed from challenging any Tier 2 decisions that fail to consider more environmentally friendly alternatives to lane-widening.

Appellants' concerns, while understandable, are misplaced. As the Agencies declared before this court, they are bound to consider site-specific alternatives under the terms of the Stipulation and under NEPA. The Agencies stipulated that they will consider Tier 2 alternatives to the lane-widening concept "where applicable laws and regulations require the consideration of other alternatives that avoid impacting specific protected environmental resources . . . ." J.A. 184. As appellees acknowledged at oral argument, "'applicable laws' include NEPA," which requires the Agencies to rigorously explore alternatives that would minimize environmental impacts.

NEPA imposes a continuing obligation on the Agencies, as nothing in the statute confines consideration of alternatives to Tier 1.

Consistent with this continuing obligation, the Agencies repeatedly confirmed at argument that they will consider site-specific alternatives to lane-widening at Tier 2:

> Court:   I want to know from the government . . . it would be good to get an answer to this in open court. I want to know, when this process moves from a general and conceptual, overall road improvement project to this more site-specific phase, whether environmental alternatives, be they rail or bypasses or whatever, whether they are still part of the calculus or whether there's something going on here that Tier 1 review in the ROD . . . has precluded and foreclosed those . . . . Is the government representing to this court that these environmental considerations will play a part in the calculus?
>
> Appellees:   Yes.
>
> Court:   It will play a part?
>
> Appellees:   Yes.
>
> . . . .
>
> Court:   I want to know whether environmental-friendly alternatives are going to be considered in the site-specific review.
>
> Appellees:   Absolutely. If the plaintiffs come in during the Tier 2 process, and during the comment period, for example, say, "You ought to consider building a bypass around this historic town," we will

> look at that, and if it's a reasonable alternative we will examine it.
>
> . . . .
>
> Court:   Bypasses continue to be an option. . . .
>
> . . . .
>
> Appellees:   If the plaintiffs come to Tier 2 and say, "We're suggesting a bypass," yeah, we will look at the option.

In addition to considering environmentally friendly alternatives to lane-widening at Tier 2, as required by NEPA, the Agencies will also analyze whether alternatives are justified by any changed circumstances. According to the Stipulation, the Agencies will consider site-specific substitutes for lane-widening "where a substantial change in the proposed action for a specific [section of independent utility] or significant new and relevant information requires consideration of an additional alternative(s)." J.A. 184. At oral argument, the Agencies confirmed their commitment to analyzing alternatives in light of changed circumstances:

> Appellees:   We have said in the Stipulation that if there's new information that comes to light down the road, if somebody says during the Tier 2 process, "Hey, you were not aware of this issue here or that issue there," we will consider whether we have to do something.
>
> . . . .
>
> Court:   Suppose the price of gas goes up to 25 dollars a gallon. . . . So it suddenly becomes very economical to take rail transportation because the price of cars and the price of gas . . . have made [automo-

> biles] a less palatable option for people. . . . In those circumstances, if circumstances changed, are you open to considering that?

> Appellees: I'm not just saying that at the lectern, your Honor. It's in the stipulation. . . . It's right there. We're not—the plaintiffs are making us out to be, you know, ready with our bulldozers and we're going to set them on automatic and walk away.

In light of the representations made in the Stipulation and at oral argument, it is clear that appellants misapprehend the Agencies' position. The district court's decision will not, as appellants contend, "clear the way for the Agencies to widen individual segments of I-81 in the future, without further consideration of alternatives, regardless of whether those widening projects are in environmentally sensitive areas or would harm historic sites." Appellants' Reply Br. 23. Rather, as required by NEPA and the Stipulation—and confirmed by appellees' counsel before this court—the Agencies will in fact consider site-specific alternatives to lane-widening at Tier 2. Such consideration is consistent with NEPA, which seeks not to thwart necessary improvements, but to channel the decision-making process in an environmentally sensitive way. *See Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350-51 (1989). Such consideration would also seem consistent with the nature of the problem, namely that one of the most heavily trafficked and dangerous thoroughfares in Virginia passes through some of its most beautiful and historic land.

Because the Agencies plan to consider site-specific alternatives at Tier 2, there is no actual dispute here, as appellees suggested at oral argument:

> Appellees: I think the plaintiffs are making a tempest out of a teapot here . . .

> Court:   So there may be less disagreement than meets the eye . . .
>
> Appellees:   That's what I started out by saying.
>
> . . . .
>
> Appellees:   Part of the problem is we're not even sure what the disagreement is about, given the way this case was briefed and handled in the district court.

We make this inquiry into the Agencies' position solely to determine whether appellants have raised a justiciable issue. This is not a matter of any future prescription, which lies beyond our authority, but a discharge of our responsibility to determine if a present controversy among the parties exists. If the present proceeding forecloses of its own force consideration of environmentally friendly alternatives in the future, that would be contrary to NEPA and a case or controversy among these parties would be extant. The record taken as a whole, however, including briefing and argument, has persuaded us that the parties have no dispute on the crucial point.

Given the lack of an actual dispute, this suit is not justiciable. Article III's case-or-controversy requirement "limit[s] the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process." *Flast v. Cohen*, 392 U.S. 83, 95 (1968). Accordingly, federal courts are prohibited from issuing advisory opinions. *Id.* at 96 ("[T]he implicit policies embodied in Article III . . . impose the rule against advisory opinions[.]"). In order for a suit to be justiciable, and not an advisory opinion, there must be an actual dispute between adverse parties. *See United States v. Johnson*, 319 U.S. 302, 304-05 (1943) (holding that "the absence of a genuine adversary issue between the parties" meant that the case was not justiciable); *Muskrat v. United States*, 219 U.S. 346, 361

(1911) (stating that federal courts may only decide "actual controversies arising between adverse litigants."). Because such a dispute is lacking here—and because we cannot issue an advisory opinion—we have no authority to adjudicate this suit.

Similarly, this suit is not justiciable because appellants have not demonstrated an injury or imminent threat of injury. A justiciable controversy exists only where a plaintiff has shown "that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury [is] both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983) (citations omitted); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("[By injury in fact we mean] an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) actual or imminent, not 'conjectural' or 'hypothetical[.]'" (citations omitted)). Accordingly, in *O'Shea v. Littleton*, 414 U.S. 488 (1974), the Court declared a suit nonjusticiable because "the threat of injury from the alleged course of conduct [was] simply too remote to satisfy the case-or-controversy requirement and permit adjudication by a federal court." *Id.* at 498.

Likewise, here, the prospect of appellants' alleged injury — that the Agencies might not consider site-specific alternatives to lane-widening at Tier 2—is sufficiently remote that we have no authority to consider appellants' request. There is simply nothing for this court to adjudicate. NEPA does not permit us to prescribe outcomes either now or in the future, but neither would it allow us to proscribe in the present proceeding even the consideration of future environmental impacts. Either the prescription of outcomes or the proscription of consideration would not only be contrary to the statute, but would raise a live and present controversy between the parties. Neither circumstance being present, there remains

nothing to dispute and we are satisfied that no justiciable controversy lingers. Accordingly, the appeal is dismissed.*

*DISMISSED*

---

*The gist of the district court's ruling is that the review process should be allowed to move beyond Tier 1 to Tier 2. Because vacatur is an equitable remedy, *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 29 (1994), and because the balance of factors reveals no good reason to vacate the district court's ruling, we decline to do so.