**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

―――――――

**No. 24-1355**

―――――――

WALMART REAL ESTATE BUSINESS TRUST; SAM'S REAL ESTATE BUSINESS TRUST

          Plaintiffs – Appellees

v.

QUARTERFIELD PARTNERS LLC; BL QUARTERFIELD ASSOCIATES LLC; Q.O.P. PROPERTIES LLC; QUARTERFIELD OFFICE PARK LLC

          Defendants - Appellants

―――――――

Appeal from the United States District Court for the District of Maryland, at Baltimore. Timothy J. Sullivan, U. S. Magistrate Judge.  (1:18-cv-03664-TJS)

―――――――

Argued: May 8, 2025                                    Decided:  June 4, 2025

―――――――

Before KING, AGEE and QUATTLEBAUM, Circuit Judges.

―――――――

Reversed and Remanded with Instructions by unpublished opinion.  Judge Agee wrote the opinion, in which Judge King and Judge Quattlebaum joined.

―――――――

**ARGUED:**  Louis Paul Malick, KRAMON & GRAHAM, P.A., Baltimore, Maryland, for Appellants.  Donald A. Rea, LAW OFFICES OF DONALD A. REA LLC, Owings Mills, Maryland, for Appellees.  **ON BRIEF:**  John A. Bourgeois, Amy E. Askew, KRAMON & GRAHAM, P.A., Baltimore, Maryland, for Appellants.

―――――――

Unpublished opinions are not binding precedent in this circuit.

AGEE, Circuit Judge:

This appeal turns on the proper interpretation of two leases related to real property in Maryland (the "Leases"): one between Walmart Real Estate Business Trust ("Walmart") and Quarterfield Partners, LLC, BL Quarterfield Associates LLC, Q.O.P. Properties LLC, and Quarterfield Office Park LLC (collectively, "Quarterfield"), and the other between Sam's Real Estate Business Trust ("Sam's") and Quarterfield. Relevant here, the Leases include a provision that grants each of Walmart and Sam's (collectively, "the Trusts") an option to purchase the real property that is the subject of the Leases (the "Purchase Option"). The question presented is whether the Trusts can exercise the Purchase Option without the occurrence of a condition precedent stated in the Leases and without the concurrence of Quarterfield. In other words, is the Purchase Option unconditional as to the Trusts, meaning that the Purchase Option requires Quarterfield to provide notice at a set time at which point the Trusts could elect to exercise it, or is it conditional, meaning that the Purchase Option does not arise until Quarterfield sends certain notices to the Trusts, at which point the Trusts could elect to exercise it?

The district court[1] held that the Purchase Option is unambiguously unconditional and that Quarterfield has a contractual duty to provide notice, which it failed to do.

---

[1] Based on the parties' consent, magistrate judges oversaw the matters in this case. Magistrate Judge Stephanie A. Gallagher was originally assigned to the case, but she was elevated to the District Court of Maryland. The case was reassigned to Judge Boardman, who was also later elevated to the same bench. It was then reassigned to Magistrate Judge Timothy J. Sullivan, who issued the final order on appeal and who declined to revisit Judge Boardman's interpretation of the contractual language at issue on appeal. To avoid confusion, when referencing any of these decisions, we refer to the district court.

3

Quarterfield's appeal stems from that decision, specifically challenging the threshold question of what type of Purchase Option the leases created. Because the district court's interpretation cannot be squared with the plain text of the Purchase Option, we reverse its judgment and remand for the entry of judgment for Quarterfield.

I.

In 2005, Quarterfield entered into the Leases with the Trusts. The Leases state that their "initial term . . . shall be for a period commencing on the Effective Date and terminating on the date that is twenty (20) years after the Rent Commencement Date, unless sooner terminated or extended (the "Initial Term")." J.A. 44, 87. The Effective Date for both Leases is April 6, 2005. The Rent Commencement Date for Walmart's Lease is March 5, 2008, and for Sam's Lease is February 21, 2008.

In the Leases, Quarterfield granted the Trusts the right to build and operate stores on separate parcels of real property. The Leases also include a Purchase Option,[2] which provides as follows:

> From the end of the tenth (10th) year of this Lease until the end of the eleventh (11th) year of this Lease (the "Option Term"), [Quarterfield] hereby grants to [the Trusts] an option to purchase the Premises from [Quarterfield] on the terms and conditions set forth herein (the "Option"). Notwithstanding the foregoing, the Option Term shall not commence until [Quarterfield] sends to [the Trusts] two (2) thirty (30) day notices of the commencement of the Option (the "Option Notice"). In the event [Quarterfield] fails to send such notice at the end of the ninth (9th) year of this Lease, then the Option Term shall be moved such that it is for a one[-]year period commencing thirty (30)

---

[2] The Purchase Options in the Leases contain different rental payment amounts and concern different parcels of land, but are otherwise identical in all manners relevant on appeal. Consequently, we refer to one Purchase Option throughout this opinion.

4

days after the Second Option Notice has been received by [the Trusts]. [The Trusts] may exercise the option to purchase the Premises by providing thirty (30) days notice to [Quarterfield] of its election to exercise the Option (the "Option Notice"). In the event [the Trusts] elect[] to exercise the Option, (i) the purchase price of the Premises (the "Purchase Price") shall be the product of the annual rent at the time of the Option Notice divided by .0825 . . . and (ii) the remainder of the terms and conditions of the purchase and sale of the Premises shall be as set forth in the purchase agreement attached hereto . . . .

J.A. 58 (Walmart Lease), 100–01 (Sam's Lease).

The parties agree that Quarterfield never sent notices commencing the Option Term, despite the ninth year of the Leases having elapsed under either party's interpretation of their start dates.[3] Nevertheless, in September 2018, Walmart sent a letter to Quarterfield asserting that it was "waiv[ing] [Walmart's] Option Notice under the Lease and exercis[ing] the Option." J.A. 149. Four months later, Sam's sent a letter to Quarterfield to the same effect. Quarterfield refused to sell the properties, and this litigation ensued.

In November 2018, Walmart filed a complaint seeking declaratory judgment, specific performance, and damages. It amended the complaint a few months later, adding Sam's as an additional plaintiff. In that complaint, the Trusts allege they attempted to exercise their options to purchase the land, but Quarterfield refused to sell. The Trusts asked the court to (1) declare that the Purchase Option was valid and enforceable, (2) order

---

[3] The parties dispute whether the Option Term is measured based on the Effective Date or the Rent Commencement Date. Quarterfield contends that, by the time Walmart and Sam's attempted to waive Quarterfield's alleged notice requirement and exercise their options in September 2018 and February 2019, respectively, the Leases' eleventh years had already ended. The Trusts contend that they did so during the tenth year of the Leases. Due to our disposition of this case, we need not address these arguments.

Quarterfield to convey the parcels of land to the Trusts pursuant to the terms of the Leases, and (3) award the Trusts damages and attorneys' fees and costs.

Quarterfield moved to dismiss the complaint, arguing that the Leases were unambiguous and did not grant the Trusts an option to purchase the property *unless* it first provided them with notice of the option term. In the alternative, it argued that the Trusts had missed the window for the option term by several years.

The district court denied Quarterfield's motion to dismiss, concluding that "it would be premature for this Court to determine, as a matter of law, whether [the Trusts] appropriately exercised their options and are entitled to specific performance." J.A. 38. It noted that "[t]he option clauses at issue are not models of clarity," and concluded that "the language at issue is susceptible to more than one meaning." J.A. 37. Namely, based on the language of the Leases, the district court found it unclear "how the parties intended to calculate the tenth and eleventh year of the [L]eases, as required by the option," "whether [the Trusts] could exercise the option in the absence of [Quarterfield's] notice, or whether [Quarterfield was] permitted to withhold the notice altogether." J.A. 37–38.

Thereafter, the parties conducted discovery and filed cross-motions for summary judgment. The district court granted the Trusts' partial motion for summary judgment, and denied Quarterfield's motion for summary judgment. It held that the Purchase Option unambiguously grants the Trusts an option to purchase the land during the option term, and that Quarterfield failed to fulfill its obligation to provide notice that the term had commenced. The district court further found the Leases "ambiguous as to when the option term began," and so considered extrinsic evidence, which it concluded showed "that the

6

option term began at the end of the tenth year after the date the stores opened for business and [the Trusts] began paying [Quarterfield] significant annual rent." J.A. 574.

The district court granted Quarterfield's request under 28 U.S.C. § 1292(b) to certify an interlocutory appeal of its partial grant of summary judgment. We initially granted permission to pursue the appeal. However, we later concluded that permission to appeal was improvidently granted because "the appeal concern[ed] whether the court misinterpreted the leases, and not whether the court misconstrued Maryland law." *Walmart Real Est. Bus. v. Quarterfield Partners LLC*, No. 20-1927, 2022 WL 16859737, at *2 (4th Cir. Nov. 10, 2022). On remand, Quarterfield moved for the district court to reconsider its decision partially granting summary judgment, which was denied.

A few months later, the district court granted in part the Trusts' motion for summary judgment as to the remaining claim for damages. It concluded that the Trusts were entitled to reimbursement of all rent paid after the Leases' deemed closing dates, post-judgment interest, and attorneys' fees and costs, but that they were not entitled to pre-judgment interest.[4]

Quarterfield timely appealed, and we have jurisdiction under 28 U.S.C. § 1291.[5]

---

[4] The Trusts originally filed a cross-appeal as to pre-judgment interest, but the parties stipulated to the dismissal of that cross-appeal before briefing.

[5] We requested supplemental briefing to ensure we have subject matter jurisdiction, and in particular, that complete diversity exists between the Quarterfield limited liability companies ("LLCs") and the Trusts. Based on that briefing, the Quarterfield LLCs are citizens of Maryland, Florida, Nevada, and Germany. It is an open question in this Court whether the citizenship of Delaware statutory trusts, such as Walmart and Sam's, is based on the citizenship of their shareholder beneficiaries or trustees. *Zoroastrian Ctr. & Darb-* (Continued)

II.

We review de novo the district court's summary judgment award, "applying the same standards as the district court." *Towers Watson & Co. v. Nat'l Union Fire Ins. of Pittsburgh, Pa.*, 67 F.4th 648, 652 (4th Cir. 2023) (quoting *DENC, LLC v. Phila. Indem. Ins.*, 32 F.4th 38, 46 (4th Cir. 2022)). Under those standards, "[s]ummary judgment is appropriate only 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)).

Maryland supplies the substantive law here because the district court was sitting in diversity. *See Zoroastrian Ctr.*, 822 F.3d at 754.

III.

Quarterfield contends the district court erred in finding that the Purchase Option was unambiguously unconditional so that Quarterfield was obligated to provide the Trusts notice. In Quarterfield's view, the Purchase Option is unambiguously conditioned on Quarterfield sending the Trusts notice, which it has no obligation to do under the plain language of the Purchase Option. We agree, but first note the obvious: the Purchase Option

---

*E-Mehr of Metro. Wash., D.C. v. Rustam Guiv Found. of N.Y.*, 822 F.3d 739, 748–50 (4th Cir. 2016). The Trusts' beneficiaries and trustees are citizens of Delaware and Arkansas. Thus, we need not resolve the question because, "regardless of the test applied, [the Trusts] met [their] burden to prove diversity of citizenship." *Id.* at 750–51.

of the Leases is poorly drafted. Nonetheless, the parties agreed to it and cannot now evade the consequences of doing so.

Under Maryland law, "unless the language of the contract is ambiguous, we interpret it based on what a reasonable person in the position of the parties would have understood the language to mean and not the subjective intent of the parties at the time of formation." *Lithko Contracting, LLC v. XL Ins. Am., Inc.*, 318 A.3d 1221, 1230 (Md. 2024) (quoting *Tapestry, Inc. v. Factory Mut. Ins.*, 286 A.3d 1044, 1053 (Md. 2022)). A contract's language is ambiguous "when, viewing the plain language in its full context, 'a reasonably prudent person could ascribe more than one reasonable meaning to it.'" *Id.* (quoting *Credible Behav. Health, Inc. v. Johnson*, 220 A.3d 303, 311 (Md. 2019)). Contract language must also be "construed in its entirety and, if reasonably possible, effect must be given to each clause so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing unless no other course can be sensibly and reasonably followed." *Connors v. Gov't Emps. Ins.*, 113 A.3d 595, 604 (Md. 2015) (quoting *Cochran v. Norkunas*, 919 A.2d 700, 710 (Md. 2007)).

A brief description of purchase options in Maryland is instructive here. In *Straley v. Osborne*, 278 A.2d 64 (Md. 1971), the Court of Appeals of Maryland[6] explained that a purchase option is "a continuing offer to sell during the duration thereof which on being exercised by the optionee becomes a binding and enforceable contract." *Id.* at 68 (quoting

---

[6] The Court of Appeals of Maryland was, at the time of *Straley*, Maryland's highest state court. In 2022, that court changed its name to the Supreme Court of Maryland. For clarity, we use "Court of Appeals of Maryland" to reference that court.

9

*Diggs v. Siomporas*, 237 A.2d 725, 727 (Md. 1968)). "The distinguishing features of an option are that it is a continuing and irrevocable offer by the optionor, which cannot be withdrawn by him during the stated period." *Id.* However, "if there exists what has been termed a right of first refusal, [] first option, conditional option, or first privilege of purchase, [the] right is conditional." *Id.* When a contract confers a conditional option or a right of first refusal, "the instrument [does not] create a continuing or irrevocable offer by the owner of the property to sell." *Id.* at 69.

In concluding that the provision at issue here created an unconditional purchase option, the district court erred by giving exclusive weight to the first sentence of the Purchase Option. In doing so, the district court effectively discarded the second sentence which placed a condition precedent on the language of the first sentence.

True, the first sentence "grants to [the Trusts] an option to purchase the Premises from [Quarterfield] on the terms and conditions set forth herein" during the option term. J.A. 58, 100–01. But we must view the Purchase Option in its entirety, lest we "cast[] out or disregard" the remaining sentences. *Connors*, 113 A.3d at 604 (quoting *Cochran*, 919 A.2d at 710). When so viewed, the second sentence conditions the first sentence on Quarterfield sending certain notices, and the rest of the provision imposes no mandate on Quarterfield to do so.

The second sentence states: "*Notwithstanding the foregoing*, the Option Term *shall not commence* until [Quarterfield] sends to [the Trusts] two (2) thirty (30) day notices of the commencement of the Option." J.A. 58, 101 (emphasis added). In other words, the second sentence imposes a clear limitation or condition on the purchase option granted in

10

the first sentence. As a result, the plain language of the Purchase Option contemplates that the option will not arise until Quarterfield sends two thirty-day notices. A reasonably prudent person therefore cannot read the Purchase Option in its entirety as creating an *unconditional* purchase option; indeed, the Leases' use of "[n]otwithstanding the foregoing" expressly prevents emphasizing the first sentence to the exclusion of the second. At bottom, in endorsing the Trusts' construction of the first sentence as creating an unconditional purchase option, the district court did exactly what it purported to avoid: "effectively eliminate[d] the language" in the second sentence. J.A. 585.

The remainder of the Purchase Option is similarly incompatible with the Trusts' interpretation, as it imposes no requirement that Quarterfield send the notices. The third sentence states: "In the event [Quarterfield] fails to send such notice at the end of the ninth (9th) year of this Lease, then the Option Term shall be moved such that it is for a one[-]year period commencing thirty (30) days after the Second Option Notice has been received by [the Trusts]." J.A. 58, 101. Far from obligating Quarterfield to send notice to the Trusts that the option term commenced, the Purchase Option contemplates that Quarterfield may decide not to send the notices at the end of the ninth year. In "that event," the Purchase Option's plain language states that the option term will simply move: it will begin whenever Quarterfield sends the notices, but it is under no obligation to do so. With that in mind, a reasonably prudent person could not conclude that the Purchase Option obligated Quarterfield to send notice to the Trusts at a specific time or at all.

Read in a vacuum, the first sentence seems to create an option that the remaining sentences immediately restrict. That structure renders the Purchase Option somewhat

11

obtuse, but it does not render it unambiguously unconditional or ambiguous. Instead, read as a whole, the Purchase Option unambiguously conditions the option term's commencement on Quarterfield sending notice, and the district court erred in holding to the contrary. Thus read, the Purchase Option's plain language requires the following conclusions: the option does not arise "until [Quarterfield] sends to [the Trusts] two (2) thirty (30) day notices of the commencement of the Option," and the decision to do so is within Quarterfield's discretion. J.A. 58, 101. It confers a right more akin to the "conditional option" referenced in *Straley*, as it does not "create a continuing or irrevocable offer by [Quarterfield] to sell" the land conveyed in the Leases. *Straley*, 278 A.2d at 69. And "the principle of freedom of contract serves the public interest in having individuals exercise broad powers to structure their own affairs by making legally enforceable promises." *Ceccone v. Carroll Home Servs., LLC*, 165 A.3d 475, 483 (Md. 2017) (cleaned up). The Trusts—which are sophisticated parties by any measure—agreed to the Purchase Option's language as part of a bilateral contract with myriad promises from each party. Yet with the benefit of hindsight, the Trusts now urge the Court to adopt an atextual interpretation of that unambiguous language. We decline to so abrogate the parties' freedom to structure their affairs how they see fit or guess at each party's motivation in agreeing to the language adopted.

The Trusts resist this conclusion, contending that Quarterfield's interpretation renders the option grant illusory because it confers unfettered discretion on Quarterfield as

12

to whether to send the notices. We do not find that argument convincing.[7] Under Maryland law, "[a]n 'illusory promise' appears to be a promise, but it does not actually bind or obligate the promisor to do anything." *Cheek v. United Healthcare of the Mid-Atl., Inc.*, 835 A.2d 656, 662 (Md. 2003). In general, Maryland courts prefer a contract interpretation that "make[s] the contract effective rather than one which will make it illusory or unenforceable." *Kelley Constr. Co. v. Wash. Suburban Sanitary Comm'n*, 230 A.2d 672, 676 (Md. 1967) (quoting *Cadem v. Nanna*, 221 A.2d 703, 708 (Md. 1966)). But that canon of construction cannot override unambiguous contractual language. *Id.* Given our conclusion that the Purchase Option *unambiguously* creates a conditional option, the Trusts cannot seek refuge in this canon of construction.[8]

In sum, the district court erred in concluding that the provision at issue creates an unconditional purchase option. Instead, the plain language of the Purchase Option

---

[7] The parties speculate over various hypothetical scenarios, such as Quarterfield's sale to a third party. We resolve only the question directly before us and decline to address hypothetical projections in an advisory opinion. *Shenandoah Valley Network v. Capka*, 669 F.3d 194, 201 (4th Cir. 2012) ("[F]ederal courts are prohibited from issuing advisory opinions.").

[8] In any event, under Maryland law, "a party with discretion is limited to exercising that discretion in good faith and in accordance with fair dealing." *Questar Builders, Inc. v. CB Flooring, LLC*, 978 A.2d 651, 670 (Md. 2009). Indeed, the district court recognized as much. J.A. 588–89 (noting that the condition of notice was subject to "general obligations of good faith and fair dealing" (cleaned up)). Thus, Quarterfield's discretion to send the notices is subject to the implied duty of good faith and fair dealing, and so is not an illusory promise. *See Questar Builders, Inc.*, 978 A.2d at 670 ("If there is a restriction, express or implied, on the promisor's ability to perform, the promise is not illusory." (quoting 2 Corbin on Contracts § 5:28 (1995)).

13

unambiguously creates a purchase option conditioned on Quarterfield sending two 30-day notices and imposes no time-constrained obligation on it to do so.[9]

IV.

Accordingly, we reverse the district court's judgment and remand for entry of judgment for Quarterfield.

<em>REVERSED AND REMANDED<br>WITH INSTRUCTIONS</em>

---

[9] It is undisputed that Quarterfield has not sent the Trusts notice that the option term has commenced, which we hold today is a condition precedent to the purchase option. Thus, we need not evaluate whether the Trusts' attempts to exercise their options were timely because, on these facts, the purchase option has not yet ripened.

Similarly, because we hold that Quarterfield has not breached the contract by failing to send the notices, we need not address the Trusts' arguments relating to damages and attorneys' costs and fees, all of which are now void.